United States District Court
Southern District of Texas
**ENTERED**
July 07, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NELSON WASHINGTON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-02511 |
| | § | |
| GULF STATES TOYOTA, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Pending before the Court is the defendant's, Gulf States Toyota, Inc. (the "defendant"), motion for summary judgment and brief in support (Dkt. No. 50). The plaintiff, Nelson Washington (the "plaintiff"), has filed a response in opposition to the motion (Dkt. No. 55), to which the defendant has filed a reply (Dkt. No. 57). After having carefully considered the motion, response, reply, the record and the applicable law, the Court determines that the defendant's motion for summary judgment should be **GRANTED in part** and **DENIED in part**.

### II. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns an employment discrimination dispute. The plaintiff, an African–American male, began working as an Operations Team Leader for the defendant on March 18, 2013, at its Spring, Texas location. During his employment with the defendant, the plaintiff was responsible for managing installation operations and overseeing associates in the defendant's Vehicle Processing Center ("VPC"). The plaintiff reported directly to Ayanna Betts ("Betts"), the defendant's Operations Manager. The plaintiff worked alongside a fellow Operations Team Leader, Christopher St. James ("St. James"), a white man who had the same duties and responsibilities as the plaintiff.

According to the plaintiff, in April 2013, Myrisha Thomas ("Thomas"), one of the installation associates who reported directly to the plaintiff began making sexual comments and gestures towards him.  Specifically, Thomas: (1) made a sexual inference about the plaintiff having small feet; (2) pressed her breast against the window of the plaintiff's cubicle to get his attention; (3) in her workout attire, Thomas sat on a desk behind the plaintiff with her legs "cocked open"; and (4) made a sexual innuendo about needing more lubrication to attach a centerpiece on a tire assembly.  The plaintiff reported Thomas' conduct to Betts as well as Kendace Culbreth ("Culbreth"), the defendant's Human Resources Manager and gave Thomas a verbal warning.

In September 2013, the plaintiff complained to Betts that he was being treated less favorably than St. James.  Specifically, the plaintiff complained that he received a lower salary than St. James and was required to conduct certain functions that were contrary to protocol while St. James was not.  After making his complaints, the plaintiff claims he began noticing that he was placed under increased surveillance and scrutiny by the defendant.  On September 30, 2013, the defendant placed the plaintiff on a Performance Improvement Plan ("PIP")[1] because of perceived deficiencies with his communication skills.

On October 1, 2013, the plaintiff raised concerns regarding the perceived discriminatory nature of the PIP—that he was not being treated like St. James.[2]  On November 6, 2013, the

---

[1] Based on the record, the PIP is a probationary program focused on professional development in specified areas. The plaintiff was given a 45 day evaluation period to improve his performance or be subject to disciplinary action. The plaintiff signed an acknowledgment of receipt of the PIP.  (See Dkt. No. 50, Ex. C, Washington Depo. at 104:14 - 105:3).

[2] The plaintiff asserts that the PIP was issued as a result of an incident during a June 3, 2013 team meeting where the plaintiff failed to restrain associates from talking and provided "excess information."  Comparatively, the plaintiff claims that St. James was involved in incidents more egregious when St. James failed to supply the associates with correct information during a presentation resulting in 10-12 associates receiving reprimands.  Also, the plaintiff reveals another incident where he accumulated 10 quality alerts on a Saturday production shift he supervised.

plaintiff confronted Thomas regarding installation assignments that were incomplete. During the encounter, Thomas became outrage and instructed the plaintiff to "shut up talking to her." Following the encounter, the plaintiff recommended Thomas' termination to Betts citing insubordination. Subsequently, the defendant commenced an investigation regarding Thomas' behavior. During the investigation, the plaintiff was informed that Thomas raised allegations of sexual harassment against him. Specifically, Thomas alleged that the plaintiff: (1) instructed her to open her legs; (2) sexually harassed her; and (3) hit her in her face with a paycheck. The plaintiff denied Thomas' allegations. On November 14, 2013, the plaintiff was placed on paid leave pending the investigation. On November 21, 2013, the defendant terminated the plaintiff's employment citing that the plaintiff was untruthful during the course of the investigation[3] and had not demonstrated sufficient improvement in accordance with the PIP.

On December 17, 2013, the plaintiff filed a charge of discrimination with the Texas Workforce Commission and Equal Employment Opportunity Commission (collectively, "EEOC") alleging claims against the defendant for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

On May 30, 2014, the EEOC issued a Dismissal and Notice of Rights Letter to the plaintiff. (*Id.*, Ex. A–2) On September 2, 2014, the plaintiff filed the instant action against the defendant alleging claims of race discrimination and retaliation in violation of Title VII as well as a claim for race discrimination in violation of 42 U.S.C. § 1981. Subsequently, on September 16, 2014, the plaintiff amended his complaint to include a Title VII sex discrimination claim. On December 16, 2014, the plaintiff sought leave from this Court to amend his complaint to include two additional claims, alleging violations of the Fair Credit Reporting Act ("FCRA") against the

---

However, St. James accumulated over 100 quality alerts that resulted in a building quarantine. The plaintiff claims that St. James was not placed on a PIP or received any adverse action for the incidents.
[3] The plaintiff argues that the defendant never specified the manner in which he was untruthful in the investigation.

defendant relative to his employment application.  On December 22, 2014, the Court entered an Order granting the plaintiff's motion for leave to file his Second Amended Complaint.  (*See* Dkt. No. 19).  On June 16, 2015, the Court granted the defendant's motion for partial summary judgment on the plaintiff's Title VII race discrimination claim due to his failure to exhaust administrative remedies.  (*See* Dkt. No. 30).  On May 2, 2016, the Court granted the defendant's motion for partial summary judgment on the plaintiff's FCRA claim.  (*See* Dkt. No. 49).

The defendant now moves for summary judgment on the plaintiff's remaining claims of race discrimination in violation of 42 U.S.C. § 1981 and sex discrimination, sexual harassment, and retaliation in violation of Title VII.  The plaintiff asserts federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## III.   CONTENTIONS OF THE PARTIES

### A.   The Defendant's Contentions

With respect to the plaintiff's section 1981 race discrimination claim, the defendant argues that the plaintiff cannot establish the he was subjected to adverse action or was treated less favorably than a similarly situated employee.  In addition, the defendant contends that the plaintiff cannot rebut their proffered legitimate, non-discriminatory reason for its actions.  Moreover, the defendant contends that record evidence demonstrates that the plaintiff cannot meet his *prima facie* case on his Title VII sex discrimination, sexual harassment, and retaliation claims.  Thus, the defendant avers that summary judgment is appropriate dismissing the remaining claims in this action.

### B.   The Plaintiff's Contentions

In response, the plaintiff argues that the record demonstrates that the defendant's proffered legitimate, non-discriminatory reason for its actions were a pretext for discrimination

for purposes of his section 1981 claim.  In addition, the plaintiff argues that the record presents evidence that creates a sufficient issue of material fact with respect to his Title VII sex discrimination, sexual harassment, and retaliation claims.  Thus, the plaintiff urges the Court to deny the defendant's motion.

## IV.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).  Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075).  "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'"  *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed. 2d 127 (1994)).  It may

not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

## V.   ANALYSIS & DISCUSSION

### A.   Disparate Treatment Under 42 U.S.C. § 1981

The Court denies the defendant's motion regarding the plaintiff's disparate treatment claim. "[R]ace discrimination claims brought pursuant to section 1981 are governed by the same evidentiary framework applicable to employment discrimination claims under Title VII." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 n. 7 (5th Cir. 2004).   Title VII forbids an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1).   In employment discrimination cases, such as the one *sub judice*, discrimination under section 1981 may be proven "through direct or circumstantial evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).   In a case where a plaintiff produces no direct evidence[4] of discriminatory intent, the Court must evaluate proof of circumstantial evidence using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).   *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)); *see also Turner*, 476 F.3d at 345 (citing *Rutherford v. Harris Cnty.*, 197 F.3d 173, 179–80 (5th Cir. 1999)).

Under the *McDonnell Douglas* burden-shifting framework:

[A] plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no

---

[4] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

credibility assessment. If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic.

*Alvarado*, 492 F.3d at 611 (emphasis, citations and internal quotation marks omitted); *see also Turner*, 476 F.3d at 345 (internal citations omitted); *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (internal citations omitted). "Although intermediate evidentiary burdens shift back and forth under [the McDonnell Douglas] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

Thus, "a plaintiff can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and (2) creates a reasonable inference that race was a determinative factor in the actions of which plaintiff complains." *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th Cir. 1996).

Under the *McDonnell Douglas* framework, a plaintiff must first demonstrate a *prima facie* case of discrimination, which, in turn, creates a rebuttable presumption of unlawful discrimination by the employer. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (citing *Burdine*, 450 U.S. at 255). To establish race discrimination under section 1981, a plaintiff must demonstrate that: "(1) [he] belongs to a protected group; (2) [he] was qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) . . . in the case of disparate treatment,

that similarly situated employees were treated more favorably." *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)).

In this case, the parties do not dispute the first and second prongs.  With regard to the third prong, the Court rejects the defendant's argument that the plaintiff was not subjected to adverse employment action by being placed on the PIP.  (*See* Dkt. No. 50, pg. 16-17).  While being placed on a PIP alone may not constitute an adverse action, being placed on a PIP coupled with being paid a lower compensation may indeed constitute an adverse action.  *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007) ("adverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating.")).

With regard to the fourth prong, the plaintiff identifies one purported similarly situated person whom he alleges was treated more favorably than himself: St. James.  (*See* Dkt. No. 55, pg. 12).  It is undisputed that while the plaintiff and St. James were both employed as Operations Team Leaders, St. James was paid a higher salary than the plaintiff.  "An individual plaintiff claiming disparate treatment in pay under Title VII must show that his circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class."  *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008) (citing *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).  "[H]e must present *prima facie* evidence that his pay was lower than specific employees who are not members of the protected class."  *Id.*  Instances when employment actions may be deemed to have been taken under nearly identical circumstances include "when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have

essentially comparable violation histories." *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citing *Wallace*, 271 F.3d at 221–22) (citations omitted).  Both the plaintiff and St. James held the same job responsibilities and reported to the same supervisor—Betts. (*See* Dkt. No. 55, Ex. D, pg. 3).  Thus, based on a review of the record and undisputed evidence, the Court determines that the record contains sufficient facts to establish a *prima facie* case of race discrimination.

The defendant's legitimate, non-discriminatory reason for the pay disparity is that St. James had a higher salary history than the plaintiff and demanded a higher salary on his employment application.  (*See* Dkt. No. 57, pg. 7).  The plaintiff disputes the validity of the proffered reason and argues that it was merely a pretext for discrimination.  At the pretext stage, "the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination."  *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999) (citing *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996)).

The defendant claims that the plaintiff's race was unknown at the time the plaintiff's salary was computed.  (*See* Dkt. No. 50, pg. 17).  The defendant argues that through its internal process, an applicant is reviewed by its compensation department who consider several factors including: "(1) the candidate's compensation history, (2) the candidate's related job experience as it compares to the position for which the candidate applied, (3) the candidate's desired compensation, and (4) compensation of incumbents at Gulf States Toyota in similar positions." (Dkt. No. 50, Ex. E, ¶ 4).   The defendant argues that its compensation department's calculation of a new hire's salary is based on the factors as they applied to the new hire's employment application without regard to race.  To show pretext, the plaintiff produces St. James' Offer

Letter Request form.   (*See* Dkt. No. 55, Ex. D).   This form indicates St. James' age and ethnicity—that at the time of his offer, he was a thirty-two year old white man.  (*See id.* at 3).

"A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"  *Laxton*, 333 F.3d at 578 (quoting *Wallace*, 271 F.3d at 220).  "[T]o rebut a defendant's showing of legitimate, nondiscriminatory reasons for its actions, '[i]t is not enough . . . to *dis* believe the employer.'"  *Warren v. City of Tupelo Mississippi*, 332 Fed. Appx. 176, 181 (5th Cir. 2009) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)).  Rather, "the factfinder must *believe* the plaintiff's explanation of intentional discrimination."  *Id.*  "The Supreme Court clarified in *Reeves* that, to meet this burden, 'a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'"  *Levias v. Texas Dep't of Criminal Justice*, 352 F. Supp.2d 751, 769 (S.D. Tex. 2004) (quoting *Reeves*, 530 U.S. at 148).

The Court finds that the evidence presented creates a sufficient dispute of material fact that summary judgment as to the plaintiff's disparate treatment claim under 42 U.S.C. § 1981 should be denied.

### B.      Sex Discrimination Under Title VII

The Court grants the defendant's motion regarding the plaintiff's disparate treatment claim as it relates to sex discrimination because the plaintiff cannot prove that Thomas was similarly situated.  The plaintiff's sex discrimination claim follows the same *McDonnell Douglas* analysis.  *See* 42 U.S.C. § 2000e-2(a)(1).  The plaintiff's employment was terminated because he was untruthful during the course of the investigation and had not demonstrated sufficient improvement in accordance with the PIP.  There is no evidence in the record that Thomas was

cited for being untruthful during an investigation or that she was placed on a PIP; thus, differentiating Thomas from the plaintiff. *See Boyd v. Corr. Corp. of Am.*, 616 F. App'x 717, 721 (5th Cir. 2015). Therefore, the Court is of the opinion that Thomas was not similarly situated and need not address whether the plaintiff has made a factual showing regarding other elements of his *prima facie* case. Accordingly, the Court grants the defendant's motion for summary judgment as it pertains to the plaintiff's sex discrimination claim under Title VII.

### C. Sexual Harassment Under Title VII

The Court also grants the defendant's motion regarding the plaintiff's sexual harassment claim. In order to establish a hostile working environment claim under Title VII, a plaintiff must prove that: (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

Because "Title VII is not a general civility code for the American workplace," the contested conduct must be extreme. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201 (1998)). "A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Shepherd v. Comptroller*

*of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 775, 118 S. Ct. 2275, 2277, 141 L. Ed. 2d 662 (1998)).   To determine whether conduct is severe or pervasive, the Court should look at the totality of the circumstances.  *See Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 330 (5th Cir. 2009).  Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.*  "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."  *Shepherd*, 168 F.3d at 874 (internal citation omitted).

First, the plaintiff's sexual harassment claim cannot survive summary judgment because he has not shown Thomas' behavior to be objectively severe.  *See Oncale*, 523 U.S. at 81.  In the plaintiff's deposition, he complains that Thomas sexually harassed him during the following incidents: (1) making a sexual inference about the plaintiff having small feet; (2) Thomas pressed her breast against the window of the plaintiff's cubicle to get his attention; (3) in her workout attire, Thomas sat on a desk behind the plaintiff with her legs "cocked open"; and (4) Thomas made a sexual innuendo about needing more lubrication to attach a centerpiece on a tire assembly.  (*See* Dkt. No. 50, Ex. C, Washington Depo. at 122:19 - 123:3, 128:17 - 130:17, 137:5-9,151:12 - 152:21).  Based on the facts of this case, the Court is of the opinion that while Thomas' conduct might be considered offensive, it does not "rise to the level of severity or pervasiveness required by law."  *Gibson v. Potter*, 264 F. App'x 397, 398 (5th Cir. 2008) (citations omitted); *see also Stewart*, 586 F.3d at 330 (while conduct was offensive, it was not severe or threatening, and, as such, was "not the kind of conduct that would interfere

unreasonably with a reasonable person's work performance or destroy her opportunity to succeed in the workplace").

The Court rejects the plaintiff's argument that Thomas' conduct was severe because the alleged harassment purportedly led to his termination.  The plaintiff contends that while Thomas claimed that the plaintiff sexually harassed her, the grievance was filed only in retaliation of the plaintiff recommending her termination for insubordination.  (*See* Dkt. No. 55, Ex. C, Culbreth Depo. at 96:23 - 97:7).  Even taking this as true, the cited reason for the plaintiff's termination was because he experienced interpersonal difficulties communicating with his subordinates and, ultimately, that he was dishonest during the internal investigation of Thomas' sexual harassment claim.  (Dkt. No. 50, Ex. A, ¶ 6).  This fact vitiates the contention that Thomas' sexual conduct led to the plaintiff's termination for purposes of his sexual harassment claim.  Thus, the plaintiff cannot establish the fourth prong of his sexual harassment claim.  Accordingly, the Court grants the defendant's motion for summary judgment as it relates to the plaintiff's sexual harassment claim under Title VII.

### D.    Retaliation Under Title VII

The Court denies the defendant's motion regarding the plaintiff's retaliation claim.  To establish a *prima facie* case of Title VII retaliation, "a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action."  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.* 320 F.3d 570, 575 (5th Cir. 2003)).

The parties do not dispute the first and third prongs of this claim.  With regard to the second prong, to constitute an adverse employment action in the context of a Title VII retaliation

claim, the challenged employment action "must be 'materially adverse,' [or] one that would 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.'" *Stewart*, 586 F.3d at 331 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006)).   An adverse employment action need not amount to an "ultimate" employment decision such as hiring, firing, or demotion. *See McCoy*, 492 F.3d at 559 (internal quotation omitted).   "The purpose of this objective standard is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'"   *Id.*

The plaintiff contends that he was retaliated against for raising concerns of desperate treatment with regard to race by being placed under increased surveillance and being placed on the PIP.  (*See* Dkt. No. 50, Ex. C, Washington Depo. at 260:2-7).   In his deposition, the plaintiff testified that he complained to Culbreth that he was being treated less favorably than St. James.  (*See id.* at 190:12-16).   Specifically, the plaintiff complained that St. James encountered similar work-related issues, but was not reprimanded by management like the plaintiff.   (*See id.* at 191:19 – 192:25).  It is undisputed that the plaintiff received scrutiny and was placed on the PIP two weeks after making his complaints.   (*See id.* at 260:2-7).   Viewing the totality of the circumstances, the Court finds that a sufficient dispute of material fact exists as to the retaliation claim.   Therefore, the Court denies the defendant's summary judgment motion as it relates to the plaintiff's retaliation claim under Title VII.

**VI.    CONCLUSION**

Based on the foregoing analysis and discussion, defendant's motion for summary judgment is **GRANTED in part** and **DENIED in part**.  The motion is denied with respect to the

section 1981 race discrimination and Title VII retaliation claims, and granted with respect to the

Title VII sex discrimination and sexual harassment claims.

It is so **ORDERED**.

SIGNED on this 7th day of July, 2016.

_____
Kenneth M. Hoyt
United States District Judge